UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RUBY F. LAWRENCE,                )
                                 )
                    Plaintiff,   )
                                 )
        v.                       )        No.  4:16 CV 1433 CDP
                                 )
NANCY A. BERRYHILL, Acting       )
Commissioner of Social Security,[1] )
                                 )
                    Defendant.   )

## MEMORANDUM AND ORDER

Plaintiff Ruby F. Lawrence brings this action under 42 U.S.C. § 405(g)

seeking judicial review of the Commissioner's final decision denying her claim for

disability insurance benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 401, *et seq.*  Because the Commissioner's final decision is supported by

substantial evidence on the record as a whole, I will affirm the decision.

### Procedural History

On August 14, 2013, the Social Security Administration denied Lawrence's

April 2013 application for DIB, in which she claimed she became disabled on May

10, 2012, because of high blood pressure, depression, and arthritis.  At Lawrence's

request, a hearing was held before an administrative law judge (ALJ) on March 11,

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), Berryhill is automatically substituted for former Acting Commissioner Carolyn W. Colvin as defendant in this action.

2015, at which Lawrence and a vocational expert testified. On June 17, 2015, the ALJ denied Lawrence's claim for benefits, finding the vocational expert's testimony to support a finding that Lawrence could perform work as it exists in significant numbers in the national economy. On August 16, 2016, the Appeals Council denied Lawrence's request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, Lawrence contends that the ALJ's decision is not supported by substantial evidence on the record as a whole. Lawrence specifically argues that the ALJ erred by according improper weight to certain opinion evidence in this case, which rendered the residual functional capacity (RFC) assessment unsupported by substantial evidence. Lawrence asks that I reverse the Commissioner's final decision and remand the matter for further evaluation. For the reasons that follow, I will affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Lawrence's recitation of facts set forth in her Statement of Uncontroverted Material Facts (ECF #18) to the extent they are admitted by the Commissioner (ECF #23-1). I also adopt the additional facts set forth in the Commissioner's Statement of Additional Material Facts (ECF #23-2), as they are unrefuted by Lawrence. Together, these statements provide a fair and accurate description of

the relevant record before the Court.

Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A.    Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, Lawrence must prove that she is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the

claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities.  If the claimant's impairment(s) is not severe, then she is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work.  If so, the claimant is not disabled.  Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  Determining whether there is substantial evidence requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th

Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.    ALJ's Decision

In her written decision, the ALJ found that Lawrence met the insured status requirements of the Social Security Act through December 31, 2017, and that she had not engaged in substantial gainful activity since May 10, 2012, the alleged onset date of disability. The ALJ found Lawrence's bilateral osteoarthritis of the hips, carpal tunnel syndrome, and affective disorder to be severe impairments, but determined that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17-18.) The ALJ found Lawrence to have the RFC to perform light work with the following limitations:

> [S]he can occasionally climb ramps and stairs, stoop, kneel and crouch. She should never climb ladders, ropes or scaffolds, or crawl. She can frequently user her upper extremities for grasping, handling and fingering. She should have only occasional exposure to extremes

of cold.  Due to her mental impairment, she is capable of performing
simple, routine tasks in an environment where there is only occasional
contact with supervisors, co-workers and the general public.

(Tr. 19.)  The ALJ found Lawrence's RFC to prevent her from performing her past

relevant work as an assembly line worker or as a returns clerk.  (Tr. 25.)

Considering Lawrence's RFC and her age, education, and work experience,

the ALJ found vocational expert testimony to support a conclusion that Lawrence

could perform other work as it exists in significant numbers in the national

economy, and specifically as a housekeeper/cleaner, night watchman, and mail

room clerk.  The ALJ therefore found Lawrence not to be disabled at any time

from May 10, 2012, through the date of the decision.  (Tr. 25-26.)

Lawrence claims that this decision is not supported by substantial evidence

because the ALJ accorded improper weight to the opinion evidence of record in

determining her RFC.

C.    Weight Accorded to Opinion Evidence

When evaluating opinion evidence, an ALJ is required to explain in her

decision the weight given to any opinions from treating sources, non-treating

sources, and non-examining sources.  *See* 20 C.F.R. § 404.1527(e)(2)(ii).  The

Regulations require that more weight be given to the opinions of treating

physicians than other sources.  20 C.F.R. § 404.1527(c)(2).  A treating physician's

assessment of the nature and severity of a claimant's impairments should be given

controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.; see also Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004). This is so because a treating physician has the best opportunity to observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2).

When a treating physician's opinion is not given controlling weight, the Commissioner must look to various factors in determining what weight to accord that and any other medical opinion of record, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for her findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. § 404.1527(c), (e). Inconsistency with other substantial evidence alone is a sufficient basis upon which an ALJ may discount a treating physician's opinion. *Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005). The Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's

opinion." 20 C.F.R. § 404.1527(c)(2).

In this action, the ALJ considered all of the opinion evidence of record and accorded varying weights to the medical opinions.  Lawrence contends that the ALJ accorded improper weight to certain of them.  For the reasons that follow, the ALJ did not err.

1.    *Single Decision Maker*

Lawrence argues that the ALJ erred when she considered the opinion of a State agency single decision maker (SDM) to be a medical opinion regarding her physical ability to perform work-related activity.  It is undisputed that the opinion of an SDM is not medical opinion evidence, and an ALJ commits legal error if she weighs the opinion of an SDM under the rules appropriate for weighing an opinion from a medical consultant.  *Dewey v. Astrue*, 509 F.3d 447, 449-50 (8th Cir. 2007). To the extent the ALJ here may have considered the SDM opinion evidence, such consideration was harmless in the circumstances of this case.

First, the ALJ specifically identified the weight she gave to all of the *medical* opinions contained in the record.  (Tr. 24-25.)  She did not indicate what weight, if any, she gave to the SDM non-medical opinion.  Although the ALJ acknowledged this opinion's presence in the record (Tr. 24), I cannot find that she improperly considered it as medical evidence when she did not discuss or assign weight to it under the rules governing medical opinion evidence.  Nor do the ALJ's

conclusions regarding Lawrence's physical RFC show that she relied on the SDM's opinion in making the RFC assessment.  Indeed, the ALJ's physical RFC assessment imposed postural and manipulative limitations where the SDM found none.  (*Compare* Tr. 19 *with* Tr. 72-73.)

Further, the ALJ's determination of Lawrence's physical RFC is based upon a thorough review of the record as a whole.  The ALJ did not rely solely or even heavily on any one assessment.  The RFC is consistent with substantial medical evidence of record, including that obtained from Lawrence's treating physician, Dr. Laila Hanna.  From April 2013 through December 2014, Lawrence complained to Dr. Hanna of intermittent hip, back, and wrist pain; but diagnostic tests showed only mild conditions, and medications resolved the pain.  *See Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) ("We do not consider impairments controllable by treatment or medication to be disabling."); *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) (diagnosis tempered by the words "mild" or "minimal").  In November 2013 and March 2014, Lawrence reported to Dr. Hanna that she experienced no pain and the record shows that she was taking no pain medication during that time. When Lawrence again complained of joint pain in June 2014, musculoskeletal examination was normal in all respects.  The only limitation in motion was exhibited in September 2014 when Lawrence experienced pain with flexion of the lumbar spine.  Otherwise, all other examinations showed no limitation or muscle

spasm.  Notably, Dr. Hanna never placed any restrictions on Lawrence's activities.
*See Hensley v. Barnhart*, 352 F.3d 353, 356 (8th Cir. 2003) (finding of no
disability supported by fact that no functional restrictions were placed on
claimant's activities).

In addition, Dr. David T. Volarich examined Lawrence in January 2013 in
relation to Lawrence's work-related repetitive motion injury.  At the conclusion of
the exam, Dr. Volarich recommended that Lawrence minimize repetitive
manipulative action with her upper extremities.  Dr. Volarich opined, however, that
Lawrence could "handle weights to tolerance" both with her arms extended and
with arms close to her body.  (Tr. 436.)  The ALJ gave Dr. Volarich's opinion
some weight (Tr. 25)[2] and the physical RFC assessment appears to incorporate
these opined limitations, which, as noted above, are more restrictive than as opined
by the SDM.

The ALJ's physical RFC assessment is based upon a review of the record as
a whole and is supported by substantial evidence.  Nothing in the ALJ's decision
shows that she considered or weighed the SDM opinion as medical opinion
evidence.  Moreover, because the RFC assessment is supported by substantial
evidence even in the absence of the SDM opinion, it does not appear that the ALJ
would have assessed Lawrence's physical RFC any differently had she not

---

[2] Lawrence does not challenge the weight given to Dr. Volarich's opinion.

considered the opinion.  Accordingly, to the extent the ALJ may have considered the SDM opinion, any error in this regard was harmless.  *See Byes v. Astrue*, 687 F.3d 913, 917-18 (8th Cir. 2012).  *See also Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (declining to remand for alleged error in opinion when error "had no bearing on the outcome") (internal quotation marks omitted).

2.    *Treating Psychiatrist, Dr. Alicia Gonzalez*

Dr. Alicia Gonzalez was Lawrence's treating psychiatrist since November 2013.  She saw Lawrence on five separate occasions between November 2013 and December 2014.  In April 2015, Dr. Gonzalez submitted a Mental RFC Assessment wherein she opined that Lawrence experienced moderate and marked limitations in work performance, social interactions, and adaptation.  Finding this opinion to not be "completely consistent" with the totality of the medical evidence or with Dr. Gonzalez's own treatment notes, the ALJ determined to accord only "some weight" to this opinion.  (Tr. 25.)  Lawrence argues that this was error, given that the opinion was rendered by a treating physician and thus was entitled to significant if not controlling weight.  Because the ALJ's reasons for according only some weight to Dr. Gonzalez's opinion are supported by substantial evidence on the record as a whole, I defer to that determination.

The medical evidence of record shows that Lawrence visited LCSW Michelle Goldstein in November 2012 with complaints of severe depression.

- 11 -

Lawrence was not taking any psychotropic medication or receiving any type of mental health treatment.  Her mental status examination showed that she was anxious, but otherwise the exam was normal.  LCSW Goldstein assigned a GAF score of 55, indicating moderate symptoms.  Lawrence visited Goldstein once more in November 2012 but failed to appear for any additional appointments.

Lawrence's general physician, Dr. Hanna, prescribed Zoloft in December 2012, but Lawrence had stopped taking the medication by April 2013.  Dr. Hanna then prescribed Wellbutrin, an antidepressant.  Lawrence thereafter underwent a consultative psychological examination with Michael T. Armour, Ph.D. in July 2013, and reported that she was currently taking Buspirone, an anti-anxiety medication.  Based on Lawrence's historical report of symptoms, Dr. Armour opined at that time that Lawrence had severe impairments in her ability to interact socially, adapt to her environment, and sustain concentration and persistence.  He observed, however, that Lawrence's memory was intact and she had adequate insight and judgment.

Lawrence began treatment with Dr. Gonzalez four months later, in November 2013, whereupon she was prescribed Zoloft, Wellbutrin, and lithium.  She was also referred to psychological counseling through Behavioral Health Services.  During counseling, Lawrence's level of functioning was consistently found to be mildly to moderately impaired; and, as she progressed through

- 12 -

treatment with both counseling and medication management with Dr. Gonzalez, Lawrence's condition improved.  Any setbacks appeared to involve family conflict and inconsistent use of her medication.  In August 2014, less than one year after beginning regular mental health treatment, Lawrence reported to Dr. Gonzalez that she experienced no symptoms when taking her medication.  Likewise, in September 2014, she reported to her counselor that she was not as depressed, her symptoms were manageable, and she wanted to expand her social circles and find activities outside the home – including taking classes at the YMCA.[3]  Lawrence was never observed to have a memory impairment and, indeed, Dr. Gonzalez affirmatively noted in her treatment records that Lawrence's memory was intact and not impaired.

In April 2015, Dr. Gonzalez completed the Mental RFC Assessment referred to above, opining that Lawrence experienced marked limitations in the various domains of functioning.  Specifically, in the domain of work performance, Dr. Gonzalez opined that Lawrence was markedly limited in her ability to make appropriate simple work-related decisions and to understand, remember, and carry out simple work instructions and procedures.  In the domain of social interactions,

---

[3] Other evidence of record, including Lawrence's testimony, showed Lawrence to care for her infant grandchild during the relevant period for days or weeks at a time and that she felt happy and useful with such activity.  She sometimes needed help to bathe the child but otherwise had no problems either physically or mentally with this activity.

Dr. Gonzalez opined that Lawrence was markedly limited in her ability to interact appropriately with the general public or customers, to work in coordination with or in close proximity to others, and to accept instructions and respond appropriately to criticism from supervisors or co-workers.  In the domain of adaptation, Dr. Gonzalez opined that Lawrence was markedly limited in her ability to respond appropriately to work-related stressors, to demonstrate reliability in a work setting, and to sustain extended periods of employment without decompensation from periodic exacerbation of psychiatric symptoms.  Dr. Gonzalez further opined that Lawrence had moderate limitations in these domains, and specifically, in her ability to maintain a work schedule and be consistently punctual; to understand, remember, and carry out detailed instructions; to maintain adequate attention, concentration, and focus on work duties through a complete work day; to complete a normal work week without interruptions from psychologically-based symptoms; and to respond appropriately to routine changes in the work setting.  (Tr. 439.)

While the evidence of record shows that Lawrence experienced limitations on account of her mental impairment, substantial evidence supports the ALJ's conclusion that the limitations were not as severe as opined by Dr. Gonzalez in her Mental RFC Assessment.  When taking her medications, Lawrence reported that she was essentially free of symptoms.  Exacerbations occurred when she was not compliant with or otherwise not taking her medication (*see, e.g.*, Tr. 365 – Dr.

Gonzalez note, "compliance unstable").  Counseling notes showed continued improvement during the course of therapy and, with the combination of therapy and medication management, Lawrence was ready to engage in activities that required significant mental abilities, such as taking classes.  And indeed, Lawrence successfully engaged in activities requiring such abilities, including the significant task of providing long term babysitting care for an infant.  The ALJ therefore did not err when she found Dr. Gonzalez's contrary opinion not to be completely consistent with other substantial evidence of record.  *See Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (ALJ gave little weight to treating physician's opinion that was inconsistent with treatment records and objective medical evidence, and not supported by physician's own exams and test results).

Nor did the ALJ err when she found Dr. Gonzalez's opinion not to be completely consistent with her own treatment notes.  As discussed above, Lawrence showed improvement with medication management and therapy, and Dr. Gonzalez noted this improvement in her notes.  Nowhere in her treatment notes did Dr. Gonzalez record any observations or findings consistent with the marked limitations she made in the Mental RFC Assessment.  Nor did Dr. Gonzalez impose any limitations during her treatment of Lawrence.  In addition, despite making explicit findings during treatment that Lawrence had no memory impairment, Dr. Gonzalez opined in the Mental RFC Assessment that Lawrence

- 15 -

had moderate to marked limitations in this domain.  An ALJ does not err when she discounts a treating physician's RFC statement where the limitations listed in the statement stand alone and were never mentioned in the physician's numerous records of treatment.  *Cline*, 771 F.3d at 1104.

Because the ALJ's reasons to discount Dr. Gonzalez's Mental RFC Assessment are supported by substantial evidence on the record as a whole, the ALJ did not err in according only some weight to the Assessment.  *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) (opinions of treating physicians may be given limited weight if they are inconsistent with the record) (citing *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015)).

### 3.   *Consulting Psychologist, Dr. Michael T. Armour*

As noted above, Lawrence underwent a consultative psychological examination for disability determinations with Dr. Armour in July 2013.  During this examination, Lawrence reported that she felt sad and had been depressed since she was seventeen years old but did not see a mental health professional until November 2012.  She also reported that during the time that she worked – which was in factories and warehouses – she kept to herself and did not talk to anyone at work.  Lawrence also reported that she currently had difficulty reading in that she could not understand what she reads; but she did not know why she was having this problem.

Upon obtaining this and other background information from Lawrence, Dr. Armour conducted a mental status examination (MSE) during which he noted Lawrence to be alert and oriented times three.  Her speech was slow, flat, and soft.  Her responses to Dr. Armour's questions were relevant, coherent, and easily understood.  They flowed in a logical, sequential, and goal-directed manner.  Lawrence showed no signs of loose associations, tangential thinking, or circumstantial thinking.  Dr. Armour noted Lawrence's mood to be sad and her affect flat.  She interacted appropriately but appeared withdrawn.  Lawrence reported intermittent sleep and overeating.  She also reported having no energy and wanting to cry.  She currently had no suicidal, homicidal, or assaultive thoughts or plans but reported a past suicide attempt with sleeping pills.  Dr. Armour estimated Lawrence's intellectual functioning to be in the low average range.  He found Lawrence's long-term memory to be grossly intact based upon her ability to give a detailed social history that was internally consistent.  He also found Lawrence's immediate memory to be intact and her recent memory to be fair.  Lawrence's insight and judgment were noted to be adequate.  (Tr. 296.)  Dr. Armour diagnosed Lawrence with major depressive disorder, recurrent, severe and assigned a GAF score of 40-45, indicating serious symptoms.  (Tr. 296-97.)

In the various domains of functioning, Dr. Armour opined that Lawrence was mildly to moderately impaired in her ability to understand and recall

directions. He based this conclusion on Lawrence's reported reading difficulty and her ability to recall words during the MSE. He opined that Lawrence's current memory problems appeared to be reflective of her severe depressive symptoms. In the domain of sustained concentration and persistence, Dr. Armour opined that Lawrence was severely impaired. He based this conclusion on Lawrence's reported long-standing history of depression, her reported worsening of symptoms and difficulty in motivation and interest, and her reported difficulty in sustaining concentration and focus. In the domain of social interaction and adaptation, Dr. Armour opined that Lawrence was severely impaired, again noting Lawrence's reported history of depressed mood and isolation, as well as her reported loss of interest, crying spells, and past suicide attempt.

The ALJ accorded little weight to Dr. Armour's opinion, finding it to be inconsistent with the totality of the evidence and also because it was based on only one examination. Because these legally sufficient reasons are supported by substantial evidence on the record as a whole, I defer to the ALJ's determination.

First, as discussed above, the record shows that Lawrence's mental condition improved with medication and therapy. Indeed, when Lawrence was compliant with treatment, her depressive symptoms were alleviated. *See Brace v. Astrue,* 578 F.3d 882, 885-86 (8th Cir. 2009) (evidence showed that, when taken, medication was successful in controlling mental illness). In addition, Dr. Armour rendered his

opinion based on a one-time examination that occurred months before Lawrence

began receiving regular and consistent mental health treatment.  An ALJ does not

err in discounting opinion evidence where the record shows the claimant not to

have been undergoing effective treatment during the time the physician opined that

claimant's condition was disabling.  *Id.* at 886.  *See also Kelley v. Callahan,* 133

F.3d 583, 589 (8th Cir. 1998) (opinion of consulting physician who examines

claimant once does not generally constitute substantial evidence).  Further, I note

that Dr. Armour's opinion was based largely on Lawrence's self-reported

symptoms, which the ALJ properly found not entirely credible.[4]  An ALJ may

discount a medical opinion when it is based on a claimant's subjective complaints

that the ALJ does not find credible.  *Julin*, 826 F.3d at 1089.

The ALJ did not err in according Dr. Armour's opinion little weight.

4.    *State Agency Psychological Consultant*

On August 8, 2013, Marsha Toll, Psy.D., a psychological consultant with

disability determinations, completed a Mental RFC Assessment based upon her

---

[4] Although Lawrence does not challenge the ALJ's credibility determination here, a review of
the ALJ's decision nevertheless shows that, in a manner consistent with and as required by
*Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted), the ALJ
thoroughly considered the subjective allegations of Lawrence's disabling symptoms on the basis
of the entire record before her and set out numerous inconsistencies detracting from the
credibility of such allegations.  (Tr. 24.)  The ALJ may disbelieve subjective complaints where
there are inconsistencies on the record as a whole.  *Battles v. Sullivan*, 902 F.2d 657, 660 (8th
Cir. 1990).  The ALJ's credibility determination here is supported by substantial evidence on the
record as a whole, and I am therefore bound by the ALJ's determination.  *Robinson v. Sullivan*,
956 F.2d 836, 841 (8th Cir. 1992).

review of the evidence of record, including Dr. Armour's' consultative examination.  In her Assessment, Dr. Toll opined that Lawrence had no limitations in understanding and memory but was limited in her ability to sustain concentration and persistence, to interact socially, and to adapt.  Specifically, Dr. Toll opined that Lawrence was moderately limited in her ability to maintain attention and concentration for extended periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting.  (Tr. 73-75.)  She opined that Lawrence had mild restrictions in activities of daily living, and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace.  (Tr. 70-71.)  Dr. Toll concluded that with these limitations, Lawrence could perform simple work away from the public.  (Tr. 75.)

In her written decision, the ALJ accorded great weight to Dr. Toll's opinion, finding it to be consistent with the totality of the medical evidence of record and not inconsistent with the medical evidence received at the hearing level.  (Tr. 24.)  Lawrence claims that the ALJ erred by relying on and giving greater weight to the opinion of this non-treating, non-examining source than to opinions rendered by treating and examining physicians.  For the following reasons, the ALJ did not err.

First, I note that the ALJ did not rely solely on Dr. Toll's opinion when determining the severity of Lawrence's mental impairment and assessing her RFC.

Instead, the ALJ considered the record as a whole, including the opinions of Lawrence's treating and examining physicians. *See Harvey v. Barnhart,* 368 F.3d 1013, 1016 (8th Cir. 2004) (ALJ properly relied on non-examining physician's opinion as one part of the record which, as a whole, provided substantial support for the opinion's findings). Further, given that the opinion of examining psychologist Dr. Armour was inconsistent with the record, and the opinion of treating psychiatrist Dr. Gonzalez was inconsistent with the record and her own treatment notes, it was not improper for the ALJ to consider the opinion of this State agency psychological consultant. *See Hacker v. Barnhart,* 459 F.3d 934, 939 (8th Cir. 2006) (ALJ "clearly authorized" to consider opinion of non-examining agency physician where treating physicians' opinions were inconsistent with substantial evidence in the record). Moreover, because Dr. Toll is a State agency psychological consultant, she is considered to be a highly qualified expert in Social Security disability evaluation, and the ALJ properly considered her findings as opinion evidence. 20 C.F.R. § 404.1527(e)(2)(i).

Notably, Lawrence does not argue that Dr. Toll's opinion is inconsistent with the record. Instead, she argues only that the opinion should not be given greater weight than those of treating or examining physicians. But an ALJ is permitted to give greater weight to a State agency medical opinion where, as here, other opinions are inconsistent with the evidence of record. *Hacker*, 459 F.3d at

939.  As discussed earlier, within a year after Lawrence began receiving regular counseling and medication management, her depressive symptoms waned, she regularly engaged in the substantial and responsible activity of caring for her infant granddaughter, and she sought out more socially and mentally demanding activities.  During that period, Lawrence's counselor considered Lawrence's level of functioning to be mildly to moderately impaired.  (Tr. 344-55.)  Lawrence's functioning worsened when she ran out of medication (*see* Tr. 305, 334-43); but with continued counseling and a reestablished medication regimen, Lawrence improved and reported having no symptoms, improved focus, and renewed motivation (Tr. 371, 393).  Dr. Toll's RFC assessment is consistent with this substantial evidence of record.  The opinions of Lawrence's treating and examining physicians are not.

It is the duty of the Commissioner to resolve conflicts in the medical opinion evidence, *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012); and, when assessing a claimant's RFC, an ALJ need not credit the entirety of a medical opinion or directly correlate a medical opinion to the RFC.  *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).  Instead, the ALJ must determine a claimant's RFC based on her review of the record as a whole.  The ALJ here evaluated all of the medical opinion evidence of record and adequately explained her reasons for the weight given this evidence.  For the reasons set out above, substantial evidence on

- 22 -

the record as whole supports the weight accorded by the ALJ to the medical opinion evidence in this case.

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id.*; *see also Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Lawrence was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966. I may not reverse the decision merely because substantial evidence exists that may support a contrary outcome.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Ruby F. Lawrence's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 18th day of July, 2017.